IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATS TREE SERVICES, LLC,<br><br>    Plaintiff,<br>v.<br><br>FEDERAL TRADE COMMISSION; LINA M. KHAN, in her official capacity as Chair of the Federal Trade Commission; and REBECCA KELLY SLAUGHTER, ALVARO BEDOYA; ANDREW N. FERGUSON, and MELISSA HOLYOAK, in their official capacities as Commissioners of the FTC,<br><br>    Defendants. | Case No. 2:24-cv-01743-KBH |

## DECLARATION OF DAVID SERVIN

Pursuant to 28 U.S.C. § 1746, I, David Servin, declare as follows:

1. I am over the age of 18 years. The facts set forth in this declaration are based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.

2. I am the Chief Financial Officer of ATS Tree Services, LLC ("ATS") and I also have a 5% ownership share of ATS.

3. I have served as ATS's Chief Financial Officer or served effectively in that capacity for many years. As Chief Financial Officer, I am responsible for many administrative responsibilities at ATS, including employment agreements, employee onboarding, and finances. As a result of my role as Chief Financial Officer, I am familiar with the non-compete agreements that ATS asks its employees to sign and their importance to ATS's business.

1

4. ATS is a professional tree service company based in Perkasie, Pennsylvania that serves residential, commercial, industrial, and municipal clients.

5. ATS provides a variety of tree care services, including tree trimming and removal, tree preservation, emergency responses to storm damage, and the preparation of tree management plans.

6. The tree care ATS is engaged in requires specialized skills that are developed through extensive training and internal and third-party certifications to ensure that the trees are properly cared for and that limbs or entire trees can be safely removed without unnecessary risk to ATS's crew or other people and property in the area.

7. ATS is known in our community for its tree care expertise, and it is regularly called upon by other tree care companies to assist with technically difficult tree removals.

8. ATS employs around a dozen people, including skilled tree climbers.

9. One of ATS's employees is an estimator, who maintains extensive proprietary knowledge of ATS's pricing structure, clients, and overall business strategy.

10. ATS's estimator also interacts directly with many of ATS's clients and can develop a relationship with those clients that is an important component of customer goodwill towards ATS.

11. ATS's employees receive significant specialized training to ensure they have the skills to operate at ATS's high level of technical expertise and in accordance with the ATS-specific methods and processes ATS has developed over its 10 years in operation to offer customers quality tree care service at a competitive price.

12. ATS provides its employees with the opportunity to apprentice for five different roles or certifications within the company, including arborist, bucket operator, and tree climber.

13. Each apprenticeship includes specialized training and the acquisition of any necessary internal or third-party certifications at ATS's expense to help the employee develop the skills necessary for the role and learn any methods unique to ATS for fulfilling that role.

14. For example, tree climbing is a technical skill that requires the climber to use ropes and specialized devices to climb a tree and then use technical rigging to lower limbs that are trimmed from the tree.

15. ATS invests great attention and thousands of dollars in specialized on-the-job climber training with ATS's experienced climbers and individual technical climbing gear so that those interested employees can be internally certified as a master climber. The on-the-job training comes at an additional cost to the productivity of the tree crew while the apprentice is developing his or her skills.

16. ATS also considers all the employees it hires for tree care work to be potential crew leaders—the highest rank in the company among its skilled employees—and works to develop each employee to attain that position.

17. As part of ATS's overall training program, ATS pays for its employees' arborist certification, specialized equipment, and commercial driver's license. Additionally, ATS pays for its employees to attend a week-long industry exposition each year at which there are additional professional development opportunities.

18. Each employee is also trusted with proprietary information about ATS's business operations and clients.

19. ATS considers its employees to be a part of the ATS family and is committed to helping them reach their full potential through ATS's specialized training and other investments.

20. Because of the significant personal investment ATS makes in its employees and the proprietary business information it shares with them, ATS requires its employees to sign a reasonable non-compete agreement.

21. In general, the non-compete agreement requires—or would only be enforced to require—employees not to engage in the same type of work they performed at ATS at a competitor tree care service provider within the geographic area in which the employee worked while at ATS for one year after leaving ATS.

22. ATS considers the non-compete agreement and ATS's specialized training and investment in its employees to be a manifestation of a mutual commitment between ATS and its employees. It is a critical component of ATS's internal operations and overall success in the tree care industry and a benefit to both ATS and its employees.

23. I understand that the Federal Trade Commission has issued a rule that bans nearly all non-compete agreements. I understand that the rule will require ATS to give notice to all current employees and former employees who are bound by ATS's non-compete agreement that their non-compete agreements will not be enforced and are no longer enforceable as of the effective date of the rule. I also understand that the rule will prohibit ATS from entering into new non-compete agreements with any employees or other workers it may hire after the rule goes into effect. I understand that the rule contains an exception for the continued enforceability of existing non-compete agreements for senior executives, but none of ATS's non-compete agreements are with employees or former employees who qualify as senior executives under the rule.

24. Without the ability to enforce its existing non-compete agreements, ATS will lose a significant benefit of its agreed employment arrangement with its employees—the restriction on

their ability to immediately leave for one of ATS's direct competitors with ATS's specialized training and investment, as well as confidential information ATS has provided to them.

25. I anticipate that ATS's employees will be in high demand from ATS's competitors because of ATS's positive reputation in the local tree service industry and the loss of any of our trained employees would harm ATS.

26. Without the ability to use non-compete agreements, ATS will be restricted in its ability to provide the same level of training of and investment in its employees because it will not be reasonable or feasible financially to continue its current approach without a guarantee that the benefits ATS expected to receive through the work of its employees will not immediately be transferred to a direct competitor.

27. The infeasibility of continuing with ATS's current employee training and investment approach will also harm the company's operational model and culture of mutual commitment between employer and employee that ATS is proud to have built and that it believes is a critical component of its success in the tree care industry.

28. ATS must also begin to take steps to bring itself into compliance with the rule ahead of its effective date on September 4, 2024. ATS will incur the expense of preparing and providing notice to its current and former employees that their non-compete agreements will not be enforced and are no longer enforceable. ATS will also have to incur expenses to review and revise its employment agreements to account for the unavailability of non-compete agreements, and those expenses may include seeking the advice of legal counsel. Additionally, ATS will have to evaluate and modify its existing employee training and investment structure and the way it conducts its hiring and business operations to account for the unavailability of non-compete agreements and the ability of its employees to leave at any time. Finally, if the rule is ultimately enjoined after its

effective date, ATS will incur additional expenses unwinding all of the changes necessitated by the rule going into effect.

Executed on May 13, 2024, at Perkasie, Pennsylvania.

_____
David Servin